AKRON BAR ASSOCIATION *v.* TOMER.

[Cite as *Akron Bar Assn. v. Tomer*, 138 Ohio St.3d 302, 2013-Ohio-5494.]

*Attorneys—Misconduct—Multiple disciplinary violations—Neglecting to act with reasonable diligence in representing a client—Client trust account improprieties—Two-year suspension, stayed on conditions.*

(No. 2013-0570—Submitted June 5, 2013—Decided December 19, 2013.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 12-008.

———————————

**Per Curiam**.

**{¶ 1}** Respondent, Michele Ann Tomer of Akron, Ohio, Attorney Registration No. 0059477, was admitted to the practice of law in Ohio in 1992.

**{¶ 2}** Relator, Akron Bar Association, charged Tomer with professional misconduct for failing to effectively communicate in two client matters, misusing her Interest on Lawyers' Trust Accounts ("IOLTA") account, and engaging in dishonest conduct during the disciplinary investigation. The parties entered stipulations of fact and misconduct and jointly recommended that Tomer serve a six-month suspension stayed on conditions. A three-member panel of the Board of Commissioners on Grievances and Discipline accepted the parties' stipulations and recommended sanction. The board, however, recommends that we suspend Tomer for two years, with the entire suspension stayed on the conditions stipulated by the parties. No objections have been filed.

**{¶ 3}** Upon our independent review of the record, we accept the board's findings of fact and misconduct and agree that the appropriate sanction is a two-year suspension stayed on conditions as recommended by the board.

## Misconduct

**{¶ 4}** Following law school, Tomer worked for 16 years as an assistant county prosecutor, mostly in the child-support-enforcement division. In January 2009, she was laid off due to county budget constraints, and she then started her own law practice concentrating in the areas of domestic relations and juvenile neglect and dependency. At the panel hearing, Tomer testified that starting a private law practice was overwhelming and intimidating, and the board noted that Tomer lacked mentors and supervisory oversight. The following misconduct ensued.

### Count one—the Bonner matter

**{¶ 5}** Tina Bonner retained Tomer to seek modification of a child-custody order, but after three months, Tomer had not filed a notice of appearance or any motions on Bonner's behalf. Further, Bonner claimed that Tomer failed to return her phone calls. Tomer also deposited Bonner's retainer into her business account rather than in an IOLTA account, failed to secure a signed notice from Bonner regarding Tomer's lack of professional liability insurance, and failed to fully refund Bonner's retainer until after relator had filed its complaint.

**{¶ 6}** Based on this conduct, the board found, and we agree, that Tomer violated Prof.Cond.R. 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(c) (requiring a lawyer to obtain a signed acknowledgment from the client that the attorney does not maintain professional malpractice insurance), and 1.15 (requiring a lawyer to hold property of clients in an interest-bearing client trust account, separate from the lawyer's own property, and to promptly deliver funds that the client is entitled to receive).

*Count two—the Terzic matter*

**{¶ 7}** Kevin Terzic paid Tomer a $1,000 retainer to represent him in a divorce action, and after competently working on the matter, Tomer determined that she owed Terzic a $370 refund. However, she sent Terzic's refund check to the wrong address. Tomer later promised to reissue the check, but instead she withdrew the funds from her IOLTA account. She failed to send Terzic the check. She also failed to secure a signed notice from Terzic regarding her lack of professional liability insurance. After relator filed its complaint, Tomer fully refunded Terzic's money.

**{¶ 8}** Based on this conduct, the board found, and we agree, that Tomer violated Prof.Cond.R. 1.4(c) and 1.15. Relator withdrew its other alleged rule violations in this count, and we hereby dismiss those charges.

*Count three—dishonesty in the disciplinary investigation*

**{¶ 9}** Travis Edmonds retained Tomer to represent him in a custody matter. He later filed a grievance with relator alleging that Tomer had failed to advance his case. In response to the grievance, Tomer provided relator with two letters that she claimed she had sent to Edmonds requesting further information from him. Tomer further told relator that because Edmonds did not reply to her letters, she discontinued working on his case. But after relator secured metadata from Tomer's electronic files, she changed her story and admitted that she had never sent Edmonds the letters and that she had created and backdated the letters after receiving a copy of Edmonds's grievance.

**{¶ 10}** Based on this conduct, the board found, and we agree, that Tomer violated Prof.Cond.R. 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation) and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate with a disciplinary investigation).

*Count four—IOLTA improprieties*

**{¶ 11}** After relator received notice that Tomer's IOLTA account had been overdrawn, relator requested that Tomer produce the bank statements for the account, which revealed several accounting improprieties. For example, Tomer had twice attempted to transfer more money out of the account than was deposited in it. Tomer later explained that she had either mistakenly accounted for funds in the account or unintentionally moved funds from the IOLTA account rather than one of her other bank accounts. In addition, the bank statements appeared to indicate that Tomer had used client funds to cover business or personal expenses. For example, transfers were made from Tomer's IOLTA account to a cell-phone company, a department store, and an electric utility company. Tomer later explained that the funds used for these transfers were earned working on client matters but that she had not moved the money to another account before using it. In the end, the board concluded that Tomer did not improperly divert any unearned client funds from her IOLTA account. However, Tomer's accounting of her client's money was described as "very basic," and she agreed to make efforts to improve her accounting system.

**{¶ 12}** Based on the condition of Tomer's IOLTA account, the parties stipulated, the board found, and we agree, that she violated Prof.Cond.R. 1.15(a)(2) (requiring a lawyer to maintain a record for each client on whose behalf funds are held) and 1.15(a)(5) (requiring a lawyer to perform and retain a monthly reconciliation of the funds held in the lawyer's client trust account).

## Sanction

**{¶ 13}** When imposing sanctions for attorney misconduct, we consider several relevant factors, including the ethical duties violated, the actual injury caused, the existence of any aggravating and mitigating factors listed in BCGD Proc.Reg. 10(B), and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16;

*Disciplinary Counsel v. Broeren,* 115 Ohio St.3d 473, 2007-Ohio-5251, 875 N.E.2d 935, ¶ 21. We have already identified Tomer's ethical violations. Consideration of the remaining factors demonstrates that the board's recommended sanction is reasonable and appropriate.

*Aggravating and mitigating factors*

**{¶ 14}** The board found that two of the nine aggravating factors listed in BCGD Proc.Reg. 10(B) are present here: (1) multiple offenses and (2) submission of false evidence, false statements, or other deceptive practices during the disciplinary process. BCGD Proc.Reg. 10(B)(1)(d) and (f). The board found that three factors in mitigation are present: (1) absence of a prior disciplinary record, (2) absence of a dishonest or selfish motive, at least in the provision of client services, and (3) good character and reputation. BCGD Proc.Reg. 10(B)(2)(a), (b), and (e).

**{¶ 15}** The panel was particularly persuaded by Tomer's "exceptionally strong [m]itigation testimony," which the panel found "significantly mitigated[d] the aggravating factors." For example, the panel noted that Tomer expressed "persistent and repeated remorse for having falsified the letters," and the panel cited the numerous awards and honors that Tomer had received for being a top young professional in the Akron area and for her dedication to community service, including a "Rising Star" designation from an Akron area magazine and a community-service award from the Ohio State Bar Foundation. The panel further noted that Tomer's lack of adequate training when entering "the private general practice of law after sixteen years of exemplary service as an assistant prosecutor in a narrow practice area" was unfortunate. According to the panel, Tomer's "high profile in the Akron area legal community as a young 'go-getter' and enthusiastic volunteer, created additional feelings of stress and lack of confidence in seeking the substantial help she greatly needed in managing both the legal and business aspects of her practice." Despite her rough start to the private practice of

law, the panel expressed its "firm belief" that Tomer "will become a very competent and well-respected practitioner with the necessary imposition of the conditions delineated."

{¶ 16} We accept the panel's conclusions about the sincerity of Tomer's mitigation testimony. "Unless the record weighs heavily against a hearing panel's findings, we defer to the panel's credibility determinations, inasmuch as the panel members saw and heard the witnesses firsthand." *Cuyahoga Cty. Bar Assn. v. Wise*, 108 Ohio St.3d 164, 2006-Ohio-550, 842 N.E.2d 35, ¶ 24.

*Applicable precedent*

{¶ 17} "A violation of Prof.Cond.R. 8.4(c) will typically result in an actual suspension from the practice of law unless 'significant mitigating factors that warrant a departure' from that principle are present." *Disciplinary Counsel v. Potter*, 126 Ohio St.3d 50, 2010-Ohio-2521, 930 N.E.2d 307, ¶ 10, quoting *Disciplinary Counsel v. Rohrer*, 124 Ohio St.3d 65, 2009-Ohio-5930, 919 N.E.2d 180, ¶ 45. We agree with the board that this case is one in which significant mitigating factors are present. Tomer has no prior disciplinary record, has demonstrated excellent character and reputation, has shown significant remorse for her actions, and except for falsifying the letters, has completely cooperated in the disciplinary process. Even relator described her falsification of the letters as a "solitary bad decision." Therefore, because of the significant mitigating factors, an actual suspension is not warranted.

{¶ 18} However, we disagree with the parties and the panel—and agree with the board—regarding the length of the stayed suspension. The parties and panel rely on *Akron Bar Assn. v. DeLoach*, 130 Ohio St.3d 153, 2011-Ohio-4201, 956 N.E.2d 811, in which we issued a stayed six-month suspension to an attorney who, like Tomer, violated Prof.Cond.R. 8.4(c) by recreating client letters as part of her response to a disciplinary grievance. But Tomer not only engaged in dishonesty, she also committed other professional misconduct, resulting mostly

from serious operational deficiencies in her new practice. Accordingly, a longer stayed suspension—to mirror her monitored probation—is warranted here.

*Conclusion*

{¶ 19} Having reviewed the record and the aggravating and mitigating factors, and having considered the sanctions previously imposed for comparable conduct, we adopt the board's recommended sanction of a stayed two-year suspension with conditions that aim to improve the organization and recordkeeping of Tomer's law practice. Accordingly, Michele Ann Tomer is hereby suspended from the practice of law in Ohio for two years, with the entire suspension stayed on the conditions that she (1) serve a two-year period of monitored probation in accordance with Gov.Bar R. V(9)(B), (2) complete 12 hours of continuing legal education ("CLE") in law-office management, including law-office accounting, office organization, and time and task management, within the first year of her suspension, in addition to the CLE requirements of Gov.Bar R. X, and (3) commit no further misconduct. If Tomer fails to comply with the conditions of the stay, the stay will be lifted and she will serve the full two-year suspension. Costs are taxed to Tomer.

Judgment accordingly.

PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

O'CONNOR, C.J., not participating.

_____

Joseph S. Kodish and Thomas R. Houlihan, for relator.

Buckingham, Doolittle & Burroughs, L.L.P., and Peter T. Cahoon, for respondent.

_____